# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| THOMAS L. THOMPSON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:14-cv-171-JAR |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Thomas L. Thompson's ("Thompson") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*

### I. Background

On November 28, 2011, Thompson protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*, alleging disability beginning April 1, 2009. The Social Security Administration denied Thompson's claim on March 28, 2012. Thompson filed a timely request for a hearing before an administrative law judge ("ALJ") on April 18, 2012. Following a hearing on September 25, 2013, the ALJ issued a written decision on October 28, 2013, upholding the denial of benefits. (Tr. 12-19.) Thompson then requested review of the ALJ's decision by the Appeals Council on

October 31, 2013 (Tr. 6), which request was denied. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Thompson filed the instant motion for review on December 1, 2014. (Doc. No. 1.) The Commissioner filed an Answer. (Doc. No. 9.) Thompson filed a brief in support of his complaint (Doc. No. 11) and the Commissioner filed a brief in support of the answer. (Doc. No. 16.) Thompson did not file a reply.

## II.  Decision of the ALJ

The ALJ determined Thompson had not engaged in substantial gainful activity since April 1, 2009, the alleged onset date. (Tr. 14.) The ALJ found Thompson had the severe impairments of degenerative disc disease of the lumbar spine, status post microdiscectomy, and status post hip surgery (Tr. 14-15), but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15.)

After considering the entire record, the ALJ determined Thompson had the residual functional capacity ("RFC") to perform light work, except that he must have an option to sit or stand on an hourly basis, and he is limited to occasional stooping, kneeling, crouching or crawling. Id. The ALJ found that, although Thompson is unable to perform any past relevant work, there are jobs that exist in significant numbers in the national economy that Thompson can perform, such as cashier, security guard, and factory inspector. (Tr. 17-18.) Thus, the ALJ concluded Thompson has not been under a disability from April 1, 2009, through the date of the decision. (Tr. 18.) Thompson appeals the ALJ's decision, arguing that the ALJ's evaluation is not supported by substantial medical evidence and that the record is insufficiently developed.

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

#### A. Hearing Testimony

The ALJ held a hearing in this matter on September 25, 2013. Thompson testified and was represented by counsel. Elizabeth Clem, vocational expert, also testified at the hearing. (Tr. 26.)

##### 1. Thompson's testimony

At the time of the hearing, Thompson was 38 years old and living in government housing. (Tr. 28, 32.) Thompson lives with his wife, Catherine, and their two children. He owes regular child support to his first wife on behalf of the daughter they share together, who was sixteen years old at the time of the hearing. (Tr. 30-32.) Thompson completed the ninth grade in school and earned his GED. (Tr. 29.) Thompson receives food stamp benefits, and his wife receives approximately $690 per month in Social Security disability benefits. (Tr. 32.)

Thompson was injured approximately a decade ago when he suffered a herniated disc and a shattered pelvis following a car accident (described elsewhere in the record as a dirt bike accident)[1] wherein he collided with a tree. (Tr. 37-39.) Thompson required hip reconstruction surgery. In addition to pain emanating from his hip injury, Thompson suffers from back pain dating to an injury incurred whilst moving a refrigerator, for which he underwent surgery in 2005. He also suffers from pain in his left leg. Id. Thompson testified that the muscle deterioration in his hip requires a hip replacement, but he has been unable to afford one. Id. Thompson testified that as a result of his injury and back pain, he cannot run or jump, cannot lift

---

[1] The Court notes that the record is somewhat underdeveloped with regard to the origin of Thompson's alleged impairments, and the Court is not able to fully reconcile the disparate accounts of Thompson's original injury. The disparities are not ultimately relevant to the Court's adjudication of this action.

or carry things, and cannot push or pull things. He also cannot sit for an extended period of time without pain. (Tr. 34.) Although he testified that he is emotionally stable, Thompson stated that he has trouble with his memory and sometimes has trouble with attention and concentration. (Tr. 35.)

On a typical day, Thompson wakes up his children and gets them ready for school. (Tr. 36.) He assists in washing dishes from the evening before if necessary. He spends most of the day watching television. Id. Thompson testified that he attends his daughter's basketball games on the weekends. He does not drink, but does smoke tobacco. Id.

### 2. Testimony of vocational expert

Vocational expert Elizabeth Clem also testified at the hearing. In a hypothetical, the ALJ asked Clem to assume a person of the same age, education, and work experience as Thompson who is able to perform at the light exertional level with the following limitations: a requirement to alternate between sitting and standing on an hourly basis, and only occasional kneeling, stooping, crouching, or crawling. (Tr. 44.) Clem determined that such a person would be able to perform a job such as cashier II, Dictionary of Occupational Titles ("DOT") 211.462-010, SVP of 2. (Tr. 44-45.) Clem estimated 12,000 such jobs are being performed in the state of Missouri. Id. In addition, Clem testified that such a person could perform the job of security guard, DOT 211.462-010, SVP of 3, light work. Id. There are approximately 11,000 such jobs being performed in the state of Missouri. Id. Finally, Clem testified that such a person could work as a factory inspector, DOT 741.687-010, SVP of 2, light work. In the state of Missouri, approximately 1,500 such jobs exist. Clem testified that each of the jobs mentioned would allow the worker to sit/stand on an hourly basis.

In a second hypothetical, the ALJ asked Clem to assume the same factors identified above. However, in the second hypothetical, the exertional capacity was reduced to sedentary work. Clem testified that jobs exist in the state of Missouri that would meet such additional criteria. Clem determined that such a hypothetical individual would be able to perform a job such as dispatcher, DOT 959.167-010, SVP of 3. Clem estimated 1,100 such jobs are being performed in the state of Missouri. In addition, such a person could perform the job of telephone sales, DOT 299.357-014, SVP of 3. Clem estimated 3,100 such jobs are being performed in the state of Missouri. And finally, Clem testified that such a person could perform the job of machine tender, DOT 689.585.018, SVP of 2. Clem estimated 1,600 such jobs are being performed in the state of Missouri.

B. **Medical Records**

The ALJ summarized Thompson's medical records at Tr. 15-17. Relevant medical records are discussed as part of the analysis.

IV. **Standards**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at *2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his

6

past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

>  (1) The findings of credibility made by the ALJ;
>
>  (2) The education, background, work history, and age of the claimant;
>
>  (3) The medical evidence given by the claimant's treating physicians;
>
>  (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
>  (5) The corroboration by third parties of the claimant's physical impairment;
>
>  (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
>  (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V. Discussion

In his appeal of the Commissioner's decision, Thompson alleges the ALJ erred because his decision is not supported by substantial evidence on the record as a whole. Specifically, Thompson alleges that the ALJ never explained in writing how he reached his RFC decision or upon what medical findings he relied. Thompson points out that the record contains no functional capacity opinion from any treating or examining doctor. Thompson suggests that no evidence from a treating or examining doctor comments on Thompson's work-related limitations, and that the ALJ improperly drew his own lay conclusions regarding Thompson's abilities. Thompson further argues that the ALJ's failure to send Thompson for a consultative evaluation, as specifically requested by Thompson at the conclusion of the hearing, indicates that the ALJ failed to fully and fairly develop the record.

The Commissioner responds that the ALJ was not required to obtain a separate medical opinion, and that the ALJ's decision was supported by some medical evidence, including objective medical evidence and contemporaneous treatment notations. The Commissioner

8

argues that the ALJ additionally relied on other substantial evidence, including Thompson's own account of his daily activities, his medicinal treatment history, and the observations of a lay witness. Upon review, the Court finds substantial evidence in the record to support the ALJ's decision.

**Support in the Record as a Whole**

Thompson first alleges that the ALJ failed to explain the reasoning for his RFC decision, and that the assigned RFC is not supported by medical evidence. A claimant's RFC is "the most a claimant can do despite [his] limitations." Moore, 572 F.3d at 523. "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart,* 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Although the ALJ is not limited to considering medical evidence, "some medical evidence 'must support the determination of the claimant's residual functional capacity, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (quoting Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)).

*Medical Evidence*

The Court first concludes that the ALJ cited to sufficient medical evidence in determining Thompson's RFC. The ALJ noted, for example, that following Thompson's L5-S1 microdiscectomy in 2005, Thompson's neurological exam was normal except for a little numbness, with good strength and reflexes. And although his treating physician suggested he "get out of manual labor as an occupation," (Tr. 224), Dr. Dasher did not suggest limitations on Thompson's ability to perform less demanding work. Id. In March of 2011, during a

consultation with the Kennett Orthopedic Center, while postoperative changes to the hip and femur were noted (Tr. 268), Thompson showed no sign of instability (Tr. 270). And in monthly medical evaluations in the latter part of 2011, Thompson's lumbar spine was repeatedly noted to be "normal to palpitation without muscle spasms, tenderness or setoffs," and although tenderness was noted in his right hip and buttock, this was consistently noted as "mild-moderate." See, e.g., Tr. at 285, 310.

This medical evidence is sufficient to support ALJ's finding that Thompson can perform light work, particularly where other evidence in the record is consistent with the ALJ's conclusions. See Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (upholding the ALJ's finding that the plaintiff could perform light work based on largely mild or normal objective findings regarding her back condition, despite the fact that the medical evidence was "'silent' with regard to work-related restrictions such as the length of time she [could] sit, stand, and walk and the amount of weight she can carry"); Flynn v. Astrue, 513 F.3d 788, 789 (8th Cir. 2008) (finding that physicians' observations that the claimant had normal muscle strength and mobility constituted medical evidence supporting the ALJ's conclusion that the claimant could lift 20 pounds occasionally and 10 pounds frequently).

*Medication and Treatment*

In tandem with the objective medical evidence, the ALJ also considered Thompson's somewhat noncompliant history with treatment and medication. Thompson's records suggest that his medications assisted in managing pain and improving daily function. (Tr. 281-282.) Despite this record of success with medication, Thompson reported that he stopped taking his medication, allegedly because he could not afford it. However, Thompson's medical records also suggest that he sought treatment from an emergency department on February 4, 2013, but left

10

prior to being seen, which the ALJ found undermined his claims regarding his dedication to treatment. Thompson also refused to participate in a physical therapy regimen. (Tr. 274.) Additionally, Thompson has not recently undergone active treatment; at the time of the ALJ's decision, there had been no treatment since 2011 (some two years).

"'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'" Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (quoting Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009)). See also Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability."); 20 C.F.R. §§ 404.1530(b), 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled....").

*Thompson's Subjective Complaints and Daily Activities*

The ALJ also considered Thompson's own descriptions of his limitations, writing that "[t]he claimant reported that his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, concentrate, and use his hands have been affected," and that "[t]he claimant testified that his back problems have persisted." (Tr. 15-16.) However, the ALJ explained that while Thompson's medically determinable impairments could reasonably cause the symptoms of which Thompson complained, the ALJ determined that Thompson's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible.

When evaluating the credibility of a claimant's subjective complaints, an ALJ must consider several factors: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." Moore,

572 F.3d at 524 (citing Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008) and Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). "'An ALJ who rejects subjective complaints must make an express credibility determination explaining the reason for discrediting the complaints.'" Id. at 524 (quoting Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000)). However, the ALJ need not explicitly discuss each factor. Id. (citing Goff, 421 F.3d at 791). It is sufficient if the ALJ "'acknowledges and considers the factors before discounting a claimant's subjective complaints.'" Id. The ALJ may not discount allegations of disabling pain solely because they are not fully supported by the medical evidence, but such allegations may be found not credible if they are inconsistent with the record as a whole. Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005).

Here, the ALJ gave significant weight to Thompson's testimony regarding his daily activities in determining that Thompson's subjective complaints were not fully credible. For example, the ALJ noted Thompson's testimony that he prepares his two children for school each day. Thompson also testified that he helps with dishes and attends sporting events for his children (Tr. 36), and his self-reported Social Security Function Report states that he pays bills, prepares food, empties the trash, shops, and has no problems with personal care (Tr. 168-171). Finally, the ALJ also cited a third party observation from an agency employee in determining Thompson's credibility. A field office claims representative conducted a face-to-face interview with Thompson in November 2011, and did not observe Thompson having any difficulty with concentrating, sitting, standing, walking, or using his hands. (Tr. 157.) While a claimant "need not prove she is bedridden or completely helpless to be found disabled," Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks omitted), Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and

may be considered in judging the credibility of his complaints. See Wagner v. Astrue, 499 F.3d 842, 852–53 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that his complaints were not fully credible); Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) ("Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations.").

*ALJ's RFC Determination is Supported*

In sum, the Court finds that the ALJ's decision is supported by the record as a whole, including sufficient medical evidence, Thompson's history of medication and treatment, and his subjective testimony and daily activities. As long as substantial evidence supports the ALJ's decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. See Krogmeier, 294 F.3d at 1024 (finding substantial evidence in the record to support the assigned RFC where ALJ relied on medical records, the opinion of a consulting physician, claimant's apparent lack of motivation, and claimant's testimony regarding daily activities). Therefore, the Court will affirm the ALJ's decision.

**Failure to Order Consultative Exam**

Thompson next suggests that the ALJ failed to fully and fairly develop the record by not sending Thompson for a consultative evaluation, as Thompson's attorney requested. The ALJ addressed the request for an orthopedic consultative examination in his opinion; he stated that he denied the request "because the most recent evidence indicated that the claimant's condition was improving, and he was doing well . . . [t]here is no evidence of deterioration in his condition that would warrant any further evaluation." (Tr. 12.)

13

In Goff, 421 F.3d at 791, the Eighth Circuit noted that an ALJ is not required to seek additional clarifying medical evidence "unless a crucial issue is undeveloped" (citation omitted). See also Myers v. Colvin, 721 F.3d 521, 527 (8th Cir. 2013) (finding that the ALJ was not required to recontact the claimant's treating physicians or obtain a consultative examination where no "crucial issue" in the record required development); Halverson v. Astrue, 600 F.3d 922, 933–34 (8th Cir. 2010) (rejecting the plaintiff's claim that the ALJ should have ordered a consultative examination regarding her ability to function after he discredited her treating doctor's opinion; reasoning that the plaintiff's medical records, statements, and other evidence were sufficient to support the ALJ's decision).

Here, the ALJ properly considered the above-listed evidence in light of the relevant credibility factors, ultimately determining that Thompson could perform light work with some additional limitations. It does not appear that any crucial issue was undeveloped, nor does it appear that Thompson was prejudiced by the absence of additional evidence. "At the very least, [a] claimant's failure to provide medical evidence . . . should not be held against the ALJ when there is medical evidence that supports the ALJ's decision." Steed, 524 F.3d at 876. The ALJ's decision is supported by such evidence and is reasonable in light of the record as a whole.

**VI. Conclusion**

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate judgment will accompany this Order.

_/s/ John A. Ross_
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 30th day of March, 2016.